This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Plaintiffs-Appellants Robert and Betty Smith ("Robert and Betty") have appealed from a decision of the Summit County Court of Common Pleas that granted Defendants-Appellees Liberty Mutual Insurance Company's and Midwestern Insurance Company's motions for summary judgment. This Court affirms.
 I. {¶ 2} On August 3, 1993, Robert was involved in a motor vehicle accident while riding his bicycle along Leaver Road, in Lawrence Township, Ohio. The driver, Ms. Laura Watkins ("tortfeasor") negligently caused the vehicle she was driving to strike Robert's bicycle, which caused him to hit his head on the roadway. As a result of the accident, Robert was rendered a quadriplegic.
 {¶ 3} At the time of the accident, the tortfeasor's vehicle was insured by Beacon Insurance Company of America ("Beacon") under an automobile liability policy with limits of $100,000 per person and $300,000 per accident. Robert and Betty were insured by Grange Mutual Insurance Company ("Grange") under a personal automobile policy that included uninsured and underinsured ("UM/UIM") limits of $250,000 and $500,000, and a $1,000,000 umbrella policy. Robert settled with the tortfeasor for approximately $100,000 in liability insurance in January 1995. Robert and Betty later settled with Grange for $1,250,000 in UM/UIM coverage benefits.
 {¶ 4} Some time after Robert and Betty settled with Beacon and Grange, Robert and Betty filed suit against Midwestern Insurance Company ("Midwestern") and Liberty Mutual Insurance Company ("Liberty") seeking UM/UIM coverage pursuant to Scott-Pontzer v. Liberty Mut. Fire Ins. Co.
(1999), 85 Ohio St.3d 660. Midwestern was the insurer for Harry O'Dell, M.D., Inc., which was Betty's employer at the time of the accident. Liberty was the insurer for East Ohio Gas Company (a.k.a. Consolidated Natural Gas Company), which was Robert's employer at the time of the accident. It is undisputed that neither Robert nor Betty was working within the course and scope of his or her employment at the time of the accident.
 {¶ 5} Midwestern and Liberty filed motions for summary judgment. The trial court granted the motions on October 2, 2002. Robert and Betty have timely appealed, asserting two assignments of error. Midwestern has filed a cross appeal.
 II. Assignment of Error Number One "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF [MIDWESTERN] AS TO ITS BUSINESS OWNER'S POLICY AND UMBRELLA POLICY."
 {¶ 6} In Robert and Betty's first assignment of error, they have argued that the trial court erred when it decided that: (1) Midwestern's Business Owner's Policy ("BOP") did not constitute an "automobile liability or motor vehicle liability policy" subject to the requirements of R.C. 3937.18, and that even if the BOP was an automobile liability policy, Robert and Betty did not qualify as "insureds" under the policy; and (2) Robert and Betty did not qualify as "insureds" under Midwestern's umbrella policy. We disagree.
 {¶ 7} As an initial matter, we note that the appropriate appellate standard of review for an award of summary judgment is de novo. Doe v.Shaffer (2000), 90 Ohio St.3d 388, 390, citing Grafton v. Ohio EdisonCo. (1996), 77 Ohio St.3d 102, 105. A de novo review requires an independent review of the trial court's decision without any deference to the trial court's determination. Brown v. Scioto Cty. Bd. of Commrs.
(1993), 87 Ohio App.3d 704, 711. Thus, this Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Civ.R. 56(C); Viock v. Stowe-Woodward Co.
(1983), 13 Ohio App.3d 7, 12, quoting Norris v. Ohio Std. Oil Co.
(1982), 70 Ohio St.2d 1, 2.
 {¶ 8} According to Civ.R. 56(C), summary judgment is proper if: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence, viewed most strongly in favor of the nonmoving party, that reasonable minds can come to but one conclusion, which is adverse to the non-moving party. See State ex rel. Howard v. Ferreri
(1994), 70 Ohio St.3d 587, 589.
 {¶ 9} To prevail on a motion for summary judgment, the moving party must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Dresher v. Burt (1996),75 Ohio St.3d 280, 293. Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine issue" exists to be litigated for trial. State ex rel.Zimmerman v. Tompkins (1996), 75 Ohio St.3d 447, 449.
 {¶ 10} Civ.R. 56(C) provides an exclusive list of materials which the trial court may consider on a motion for summary judgment. Spier v.American Univ. of the Caribbean (1981), 3 Ohio App.3d 28, 29. Specifically, the materials include: affidavits, depositions, transcripts of hearings in the proceedings, written admissions, written stipulations, answers to interrogatories, and the pleadings. Civ.R. 56(C). Here, Midwestern relied on the insurance policies, i.e., the BOP and the umbrella policy, submitted with its motion for summary judgment.[1] For ease of discussion, we will discuss each policy separately.
 Midwestern's Business Owner's Policy {¶ 11} Robert has argued that the BOP which his employer maintained with Midwestern was an automobile liability policy subject to the requirements of R.C. 3937.18. We disagree.
 {¶ 12} The Ohio Supreme Court has held: "For the purposes of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties." Ross v. Farmer's Ins. Group of Cos. (1998),82 Ohio St.3d 281, syllabus. The effective period of the Midwestern BOP was October 8, 1992, to October 8, 1993. Therefore, this Court will apply the version of R.C. 3937.18 that was in effect on October 8, 1992. Thus, we apply the version of R.C. 3937.18 that existed prior to the enactment of S.B. 20 and H.B. 261, which drastically changed the language of the statute.[2]
 {¶ 13} In October 1992, R.C. 3937.18(A) provided:
 "No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state" unless both UM and UIM coverage are provided.
 {¶ 14} A provision of the BOP entitled "COVERAGE J — BUSINESS LIABILITY," which is contained in "SECTION II — GENERAL LIABILITY" of the BOP, provides general liability coverage for bodily injury, property damage, personal injury, and advertising injury. The provision reads:
 "We will pay for all amounts up to the limit of liability shown in the Declarations which you become legally obligated to pay as damages because of Bodily Injury, Property Damage and Personal Injury to which this insurance applies, caused by an occurrence." (Emphasis omitted.)
 {¶ 15} The policy also provides exclusions for coverage, which are contained in "COVERAGE J — EXCLUSIONS." Specifically, this section of the policy states:
"We will not pay for Bodily Injury or Property Damage due to:
"***
 "7. ANY LOSS RESULTING FROM THE OWNERSHIP, MAINTENANCE, OPERATION, USE ON `YOUR' BEHALF, `LOADING OR UNLOADING' OF:
 "A. ANY `AUTOMOBILE' OWNED, OPERATED BY, RENTED OR LOANED TO ANY PERSON OR ORGANIZATION INCLUDED UNDER `WHO IS INSURED', EXCEPT:
 "(1) THIS EXCLUSION DOES NOT APPLY TO THE PARKING OF A `NON-OWNED AUTOMOBILE' ON `YOUR' PREMISES.
 "(2) THIS EXCLUSION DOES NOT APPLY TO THE USE IN `YOUR' BUSINESS OF A `NON-OWNED' OR `HIRED AUTOMOBILE' BY `YOU', OR ANY OTHER PERSON WITH `YOUR' PERMISSION. COVERAGE FOR USE OF A `NON-OWNED' OR `HIRED AUTOMOBILE' IS EXCESS INSURANCE OVER ANY VALID AND COLLECTIBLE INSURANCE AVAILABLE TO `YOU'." (Emphasis omitted.)
 {¶ 16} The insurance policy provides that the terms "loading" and "unloading," as used in the above cited exclusion, mean "the handling of property after it is moved from the place where it is accepted for movement into or onto an automobile, while it is in or on an automobile, or while it is being moved from an automobile to the place where it is finally delivered." (Emphasis omitted.) A "hired automobile" means "an automobile you lease, hire, rent or borrow, excluding automobiles owned by your employees or members of their households." (Emphasis omitted.) Additionally, the term "non-owned automobile" is defined as "an automobile not owned by you, nor registered, hired, chartered, leased or loaned to you. This includes automobiles owned by your employees or members of their households, but only while used in your business and with your permission." (Emphasis omitted.)
 {¶ 17} Pursuant to the above cited exceptions contained in "COVERAGE J — EXCLUSIONS" of the BOP, Midwestern is liable for bodily injury caused by an automobile: 1) that is parked on the insured's premises (referred to as the "parking" exception), or 2) that is either a "non-owned" automobile or a "hired" automobile, and which is used in the insured's business. Based on these exceptions, which effectively provide limited liability coverage for bodily injury resulting from the use of an automobile in certain situations, Robert and Betty have argued that the BOP is an automobile liability policy pursuant to the Ohio Supreme Court's holding in Selander v. Erie Ins. Group (1999), 85 Ohio St.3d 541.
 {¶ 18} The insurance policy at issue in Selander was a general liability policy, which provided liability coverage for accidents involving "hired" or "non-owned" automobiles. The relevant language in the policy stated:
"X Non-Owned Automobile and Hired Automobile Liability Insurance
"Hired Automobile Liability
 "We will pay all sums which anyone we protect becomes legally obligated to pay as damages because of personal injury or property damage arising out of the maintenance or use of hired automobiles by you or your employees in the course of your business.
"Non-Owned Automobile Liability
 "We will pay all sums which anyone we protect becomes legally obligated to pay as damages because of personal injury or property damage arising out of the use of any non-owned automobile in your business by any person other than you." Selander, 85 Ohio St.3d at 543.
 {¶ 19} The term "hired automobile" was defined as "any automobile you lease, hire or borrow. This does not include any automobile you lease, hire, or borrow from any of your employees or members of their households, or from any partner or executive officer of yours."Selander, 85 Ohio St.3d at 543. Further, the term "non-owned" automobile meant "any automobile you do not own, lease, hire or borrow which is used in connection with your business. However, if you are a partnership, a non-owned automobile does include any automobile owned by or registered in the name of a partner, but only while such automobile is being used in your business." Id.
 {¶ 20} Based upon the policy's express provisions for automobile liability coverage, the Selander court addressed the following issue: "Do the provisions of R.C. 3937.18 apply to a policy of primary insurance which provides coverage for claims of liability arising out of the use of hired or non-owned automobiles, but is not issued for delivery with respect to some particular motor vehicle?" Id. at 542. Applying the same version of R.C. 3937.18(A) as employed in the instant matter, theSelander court concluded that a policy that provides liability coverage for non-owned or hired motor vehicles is sufficient to satisfy the requirement of R.C. 3937.18. Id. at 544-545. That is, the policy is an "automobile liability or motor vehicle liability policy" for purposes of R.C. 3937.18(A). Further, the court held that a policy that qualifies as an "automobile liability or motor vehicle liability policy" under R.C.3937.18 is required to offer uninsured and underinsured motorist coverage and if it does not, coverage will arise by operation of law. Id. at 546.
 {¶ 21} Midwestern has argued that Selander is inapplicable to the facts of this case, and that the Ohio Supreme Court's decision inDavidson v. Motorists Mut. Ins. Co. (2001), 91 Ohio St.3d 262, governs.Davidson also involved a pre-H.B. 261 version of R.C. 3937.18 and exceptions to the general exclusion for bodily injury caused by an automobile. The exclusions for bodily injury were listed in "SECTION II — Exclusions," which read:
 "1. Coverage E — Personal Liability and Coverage F — Medical Payments to Others do not apply to `bodily injury' or `property damage':
"***
"f. Arising out of:
 "(1) The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an `insured.'"
 {¶ 22} The policy further provided:
"This exclusion does not apply to:
"(1) A trailer not towed by or carried on a motorized land conveyance.
 "(2) A motorized conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:
"(a) not owned by an `insured'; or
"(b) Owned by an `insured' and on an `insured location';
 "(3) A motorized golf cart when used to pay [sic] golf on a golf course;
 "(4) A vehicle or conveyance not subject to motor vehicle registration which is:
"(a) Used to service an `insured's' residence;
"(b) Designed for assisting the handicapped; or
 "(c) In dead storage on an `insured location' * * *." (Emphasis omitted.) Davidson, 96 Ohio St.3d at 265.
 {¶ 23} Like the Selander court, the Davidson court had to determine "whether limited liability coverage for certain vehicles rendered the policy a motor vehicle liability policy, subject to the requirement of former R.C. 3937.18 to offer UM/UIM coverage." Davidson,91 Ohio St.3d at 264. However, unlike the court in Selander, theDavidson court answered the question in the negative. The court concluded that Selander was inapplicable because:
 "[I]n Selander [the court was] construing a general business liability policy that expressly provided insurance against liability arising out of the use of automobiles that were used and operated on public roads. Since there was express automobile liability coverage arising out of the use of these automobiles, [the court] reasoned that UM/UIM coverage was required." (Emphasis added.) Davidson, 91 Ohio St.3d at 267.
 {¶ 24} In contrast, the insurance policy in Davidson was "a homeowner's policy that [did] not include coverage for liability arising out of the use of motor vehicles generally. Instead, the homeowner's policy provide[d] incidental coverage to a narrow class of motorized vehicles that [were] not subject to motor vehicle registration and [were] designed for off-road use or [were] used around the insured's property."Id. The Davidson court further concluded that "Selander stands only for the proposition that UM/UIM coverage is to be offered where a liability policy of insurance expressly provides for coverage for motor vehicles without qualification as to design or necessity for motor vehicle registration." Id. at 268.
 {¶ 25} The Ohio Supreme Court has addressed the scope and application of its prior holdings in Selander and Davidson. Specifically, in Hillyer v. State Farm Fire Cas. Co., 97 Ohio St.3d 411,2002-Ohio-6662, the court explained that the type of coverage provided determines whether a policy is a motor vehicle policy rather than the type of vehicles the policy purports to cover. In more specific terms, the court advised that "[t]he coverage in Davidson was not incidental merely because it involved recreational vehicles. Instead, it was incidental primarily because coverage of those vehicles was remote from and insignificant to the type of overall coverage the policy provided."Hillyer, 2002-Ohio-6662, at ¶ 22. As a result, the court found that even though a homeowner's policy provided incidental coverage for automobiles intended for use on public highways and subject to registration, such was insufficient to transform a homeowner's policy into a motor vehicle policy for purposes of former R.C. 3937.18(A). Id.,2002-Ohio-6662, at ¶ 26.
 {¶ 26} Based upon the Ohio Supreme Court's position on the applicability of Selander to cases involving limited exceptions to general exclusions for bodily injury arising out of the use of an automobile, we find that the Ohio Supreme Court's decision in Davidson and Hillyer, rather than Selander, governs this pre-H.B. 261 case. The BOP, unlike the policy in Selander, does not expressly provide for automobile liability coverage. Rather, a limited form of automobile liability coverage arises out of the exceptions to the general exclusion for automobile liability coverage. We find that the primary purpose of the BOP is not to provide automobile liability coverage. Therefore, the "parking" exception and the "non-owned" or "hired" automobile exception are incidental to coverage because they are "remote from and insignificant to the type of overall coverage the policy provided." See Hillyer, 2002-Ohio-6662, at ¶ 22. Consequently, the "parking" exception and the "non-owned" or "hired" exception did not transform the BOP into an "automobile liability or motor vehicle liability policy" subject to the requirements of R.C.3937.18, and therefore Midwestern was not required to offer UM/UIM coverage under the policy.
 {¶ 27} Assuming arguendo that the BOP is an "automobile liability or motor vehicle liability policy" of insurance, Robert and Betty are still not entitled to UM/UIM coverage because they do not qualify as "insureds" under the policy.
 {¶ 28} The BOP defines an "insured" as:
"WHO IS INSURED
"The term `You' or `Your' in this policy means:
"1. The person or organization named in the Declarations.
"***
 "5. Your employees, while acting within the scope of their duties." (Emphasis omitted.)
 {¶ 29} Although Robert is not listed in the declarations as an insured, Robert and Betty have argued that this Court should apply the legal analysis employed in Scott-Pontzer v. Liberty Mut. Fire Ins. Co.
(1999), 85 Ohio St.3d 660, and find that Robert is entitled to UM/UIM benefits.
 {¶ 30} In Scott-Pontzer, the court addressed whether a corporation's employees were entitled to UIM coverage under the corporation's insurance policies. The court had to first determine if the definition of "insured" included a corporation's employees. A provision in the policy defined "insured" as:
"B. Who Is An Insured
"1. You.
"2. If you are an individual, any family member.
 "3. Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.
 "4. Anyone for damages he or she is entitled to recover because of bodily injury sustained by another insured." Scott-Pontzer, 85 Ohio St.3d at 663.
 {¶ 31} In holding that an employee was an "insured" for purposes of UM and UIM coverage, the court explained:
 "[I]t would be reasonable to conclude that `you,' *** also includes *** employees, since a corporation can act only by and through real live persons. It would be nonsensical to limit protection solely to the corporate entity, since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle. Here, naming the corporation as the insured is meaningless unless the coverage extends to some person or persons — including to the corporation's employees." Scott-Pontzer, 85 Ohio St.3d at 664.
 {¶ 32} Robert has argued that Scott-Pontzer applies because "the Midwestern [BOP] and Umbrella Policy contains ambiguous language as to the `insured.'" Robert has contended that "while portions of the Midwestern policies designate the named insured to be `Harry W. O'Dell M.D. Harry' or `Harry W. O'Dell, M.D. Harry W. O'Dell, M.D., Inc.,' the Common Policy Declarations identifies the named insured as `Corporation.'" (Emphasis omitted.) We find, however, that Scott-Pontzer
is inapplicable to the instant case.
 {¶ 33} A court should only attempt to apply Scott-Pontzer "where provisions of a contract of insurance are reasonably susceptible of more than one interpretation." Scott-Pontzer, 85 Ohio St.3d at 664, quotingKing v. Nationwide Ins. Co. (1988), 35 Ohio St.3d 208, 211. If, however, an insurance contract is clear and unambiguous, there is no need to applyScott-Pontzer and its interpretation is a question of law. Red HeadBrass, Inc. v. Buckeye Union Ins. Co. (1999), 135 Ohio App.3d 616, 627. Thus, the court must look to the terms of the policy to determine the intention of the parties concerning coverage. Minor v. Allstate Ins.Co., Inc. (1996), 111 Ohio App.3d 16, 20, appeal not allowed (1996),77 Ohio St.3d 1448. The court must give the words and phrases in the policy their plain and ordinary meaning. Id., citing State Farm Auto Ins.Co. v. Rose (1991), 61 Ohio St.3d 528, overruled on other grounds, Savoiev. Grange Mut. Ins. Co. (1993), 67 Ohio St.3d 500, paragraph one of the syllabus.
 {¶ 34} Here, the term "insured," as used in the BOP, is not ambiguous, and therefore needs no interpretation by this Court. Rather, the policy clearly defines who is qualified as an "insured." Unlike the definition of "insured" used in Scott-Pontzer, which defined an "insured" as a corporation, the insurance policies at issue in this case define the term "insured" to include an individual and a corporation (viz., Harry O'Dell, M.D. and Harry O'Dell, M.D., Inc.). Because the definition of "insured" includes an individual and a corporation there is no ambiguity, and therefore we need not apply Scott-Pontzer. See WestfieldIns. Co. v. Galatis (Apr. 3, 2002), 9th Dist. No. 20784, at 5 ("Where individuals and a corporation are named as insureds entitled to underinsured motorist coverage the policy language is unambiguous."); see, also, Thorne v. Amerisure Ins. Co., 9th Dist. No. 21137,2002-Ohio-6123, at ¶ 29; Caruso v. Utica Ins. Co., 9th Dist. No. 21222, 2003-Ohio-525, at ¶ 19.
 {¶ 35} As such, this Court interprets the language of the BOP as providing UM/UIM benefits, if such coverage does exist, only to the specifically named individual listed in the declarations. Robert is not listed in the declarations, and is therefore not a named insured. Accordingly, Robert is not an "insured" under the terms of the policy, and he is therefore not entitled to UM/UIM benefits.
 Midwestern's Umbrella Policy {¶ 36} Robert and Betty have contended that Midwestern's umbrella policy is an "automobile liability or motor vehicle liability policy" of insurance, subject to the requirements of R.C. 3937.18. This contention is without merit.
 {¶ 37} The umbrella policy specifically excludes coverage for bodily injury arising out of the use of an automobile. Contained in the umbrella policy's coverage form is a section entitled "SECTION I — COVERAGES," which lists exclusions for coverage. The relevant portion of the policy reads:
"3. EXCLUSIONS
"THIS INSURANCE DOES NOT APPLY TO:
"***
 "T. `BODILY INJURY' TO ANY INSURED OR TO ANY PERSON WHO IS A RESIDENT OF THE HOUSEHOLD OF THE INSURED, ARISING OUT OF THE OPERATION OR USE OF ANY `AUTO.'"
 {¶ 38} In addition to the exclusions listed in "SECTION I — COVERAGES" is an endorsement entitled "EXCLUSION/LIMITATION — AUTOMOBILE," which provides:
 "THIS INSURANCE POLICY DOES NOT APPLY TO `BODILY INJURY' OR `PROPERTY DAMAGE' ARISING OUT OF THE OWNERSHIP, MAINTENANCE, USE OR ENTRUSTMENT TO OTHERS OF ANY `AUTO' UNLESS INSURANCE IS AFFORDED BY A POLICY SHOWN UNDER ITEM B ON THE DECLARATIONS PAGE OF THIS COVERAGE FORM."
 {¶ 39} Item "B" of the declarations provides that "COMMERCIAL AUTO LIABILITY" is "EXCLUDED."
 {¶ 40} It is clear from the contractual language of the umbrella policy that Midwestern has expressly denied coverage for any injury arising out of the use of an automobile. Therefore, the umbrella policy cannot be an "automobile liability or motor vehicle liability policy" of insurance, subject to the requirements of R.C. 3937.18. As such, Midwestern was not statutorily required to offer UM/UIM coverage.
 {¶ 41} Assuming, arguendo, that the umbrella policy is an "automobile liability or motor vehicle liability policy," subject to the requirements of R.C. 3937.18, Robert and Betty are still not entitled to UM/UIM coverage. As was the case with Midwestern's BOP, the umbrella policy provides that the "insured" includes both a named individual and a corporation. For purposes of coverage under the umbrella policy, the term "insured" is defined in "SECTION II" of the umbrella liability coverage form entitled "WHO IS AN INSURED," which provides:
"1. IF YOU ARE DESIGNATED IN THE DECLARATIONS AS:
 "A. AN INDIVIDUAL, YOU AND YOUR SPOUSE ARE INSUREDS, BUT ONLY WITH RESPECT TO THE CONDUCT OF A BUSINESS OF WHICH YOU ARE THE SOLE OWNER.
 "B. A PARTNERSHIP OR JOINT VENTURE, YOU ARE AN INSURED. YOUR MEMBERS, YOUR PARTNERS, AND THEIR SPOUSES ARE ALSO INSUREDS, BUT ONLY WITH RESPECT TO THE CONDUCT OF YOUR BUSINESS.
 "C. AN ORGANIZATION OTHER THAN A PARTNERSHIP OR JOINT VENTURE, YOU ARE AN INSURED."
 {¶ 42} Harry O'Dell M.D. and Harry O'Dell, M.D., Inc. are listed in the declarations as the named insureds. As previously discussed, when an individual and a corporation are listed as the "insureds," there is no ambiguity in the contract, and Scott-Pontzer does not apply. SeeWestfield, supra at 5. Therefore, the only parties specifically listed as "insureds" are entitled to UM/UIM benefits. Here, the only parties insured under the contract are Dr. Harry O'Dell and Harry W. O'Dell, M.D., Inc. Because Robert is not listed as an "insured" he is not entitled to UM/UIM benefits.
 {¶ 43} Accordingly, Robert and Betty's first assignment of error is not well taken.
 Assignment of Error Number Two "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF [LIBERTY] AS TO ITS COMMERCIAL AUTOMOBILE POLICY AND COMMERCIAL GENERAL LIABILITY POLICY."
 {¶ 44} In Robert and Betty's second assignment of error, they have argued that the trial court erred when it held that Robert and Betty were precluded from UM/UIM coverage under Liberty's Business Auto Policy ("BAP") and Commercial General Liability Policy ("CGL") because they breached Liberty's notice requirement. We disagree.
 Liberty's BAP {¶ 45} Robert and Betty have contended that Liberty failed to offer UM/UIM coverage in the BAP, and therefore UM/UIM coverage arises by operation of law. Liberty has argued that "[t]his proposition is flawed for the simple fact that the [BAP] clearly provides UM/UIM coverage by way of an Ohio Uninsured Motorist Coverage Form." (Emphasis omitted.) Liberty does not dispute that the BAP is an "automobile liability or motor vehicle liability policy." Rather, Liberty has argued, among other things, that UM/UIM coverage does not arise by operation of law, and that such coverage is expressly provided under the terms of the contract.[3]See Selander, 85 Ohio St.3d at 546.
 {¶ 46} The BAP does, in fact, expressly provide UM/UIM coverage. Contained in the "DECLARATIONS BUSINESS AUTO COVERAGE FORM," is a section entitled "ITEM TWO — SCHEDULE OF COVERAGES AND COVERED AUTOS," which provides that both UM and UIM is offered under the BAP. However, the limits (or "THE MOST [LIBERTY] WILL PAY FOR ANY ONE ACCIDENT OR LOSS") for UM/UIM coverage is not listed in the declarations. Instead, the policy reads: "SEE STATE SCHEDULE OF LIMITS FOR UNINSURED [AND UNDERINSURED] MOTORISTS INSURANCE." The limitations for UM/UIM coverage are contained in two amended schedules: 1) the "SCHEDULE OF LIMIT OF INSURANCE FOR UNINSURED MOTORISTS COVERAGE," which provides $500,000 limits for UM coverage, and 2) the "SCHEDULE OF LIMIT OF INSURANCE FOR UNDERINSURED MOTORISTS COVERAGE," which provides $500,000 limits for UIM coverage. Additionally, the general coverage clause in the policy states: "We will pay all sums an insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto." (Emphasis omitted.).
 {¶ 47} Further, UM/UIM coverage extends to all vehicles listed as "Symbol 2" covered autos, which are:
 "OWNED AUTOS ONLY. Only those autos you own (and for Liability Coverage any trailers you don't own while attached to power units you own). This includes those autos you acquire ownership of after the policy begins." (Emphasis omitted.)
 {¶ 48} As the BAP clearly provides both UM/UIM coverage, we reject Robert and Betty's argument that UM/UIM coverage arises by operation of law.
 {¶ 49} Robert and Betty have further argued that the notice provision contained in the BAP does not apply to them. This argument is based upon their assumption that UM/UIM coverage arose by operation of law. Because we have concluded that UM/UIM was contractually provided for, Robert and Betty's argument that the notice provision does not apply to them is without merit.
 {¶ 50} The notice provision is contained in the section of the BAP entitled "SECTION IV — BUSINESS AUTO CONDITIONS," which states:
"2. DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS
 "a. In the event of accident, claim, suit or loss, you must give us or our authorized representative prompt notice of the accident or loss. Include:
"(1) How, when and where the accident or loss occurred;
"(2) The insured's name and address; and
 "(3) To the extent possible, the names and addresses of any injured persons and witnesses.
"b. Additionally, you and any other involved insured must:
"***
 "(2) Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or suit." (Emphasis altered.)
 {¶ 51} The same section also provides:
"3. LEGAL ACTION AGAINST US
 "No one may bring a legal action against us under this Coverage Form until:
 "a. There has been full compliance with all the terms of this Coverage form; and
 "b. Under Liability Coverage, we agree in writing that the insured has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial." (Emphasis omitted.)
 {¶ 52} Additionally, the policy contains an endorsement that adds several changes to the section entitled "DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS." The changes provide that an insured must:
 "a. Promptly notify the police if a hit-and-run driver is involved, and
"b. Promptly send us copies of the legal papers if a suit is brought."
 {¶ 53} The Ohio Supreme Court has recently addressed an insured's failure to abide by notice provisions contained in an automobile policy of insurance. See Ferrando v. Auto-Owners Mut. Ins. Co., 98 Ohio St.3d 186,2002-Ohio-7217. The notice provision in Ferrando provided:
 "In the event of `accident', claim, `suit' or `loss', you must give us or our authorized representative prompt notice of the `accident' or `loss'. Include:
"(1) How, when and where the `accident' or `loss' occurred;
"(2) The `insured's' name and address; and
 "(3) To the extent possible, the names and addresses of any injured persons and witnesses." Id., 2002-Ohio-7217, at ¶ 16-19.
 {¶ 54} The Ferrando court concluded: [W]hen an insurer's denial of UIM coverage is premised on the insured's breach of a prompt-notice provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the insured's unreasonable delay in giving notice. An insured's unreasonable delay in giving notice is presumed prejudicial to the insurer absent evidence to the contrary." Id. at ¶ 81.
 {¶ 55} Pursuant to Ferrando, a trial court must conduct a two-step inquiry in attempting to determine whether the notice given by the insured satisfies the requirements of a notice provision contained in an automobile policy of insurance.
 "The two-step approach in late-notice cases requires that the court first determine whether the insured's notice was timely. This determination is based on asking whether the UIM insurer received notice `within a reasonable time in light of all the surrounding facts and circumstances.' If the insurer did receive notice within a reasonable time, the notice inquiry is at an end, the notice provision was not breached, and UIM coverage is not precluded. If the insurer did not receive reasonable notice, the next step is to inquire whether the insurer was prejudiced. Unreasonable notice gives rise to a presumption of prejudice to the insurer, which the insured bears the burden of presenting evidence to rebut." (Citations omitted.) Ferrando, 2002-Ohio-7217, at ¶ 90; see, also, Wheeler v. W. Res. Mut. Cas. Co., 9th Dist. No. 02CA0043, 2003-Ohio-1806, at ¶ 18.
 {¶ 56} Although Ferrando clearly sets forth the test that must be applied in prompt-notice cases, Ferrando was decided after the trial court's decision, and therefore the trial court did not have the benefit of the two-step analysis.
 {¶ 57} Prior to Ferrando, the tests courts employed in determining whether an insured was excluded from coverage based on the insured's failure to abide by a contract's prompt-notice provision varied. Some courts required the insurer to prove that the insured failed to provide notice "within a reasonable time in light of all of the surrounding facts and circumstances," and to show that the insured suffered actual
prejudice. See West American Ins. Co. v. Hardin (1989), 59 Ohio App.3d 71,73. Other courts, including this Court, have held that once the insurer shows that notice was unreasonably delayed, prejudice is presumed. SeeOrmet Primary Aluminum Corp. v. Employers Ins. of Wasau (2000),88 Ohio St.3d 292, 303; McCann v. Nationwide Mut. Fire. Ins. Co. (May 17, 1989), 9th Dist. No. 88CA004433, at 8, citing Patrick v. Auto-OwnersIns. Co. (1982), 5 Ohio App.3d 118; TIG Ins. Co. v. O.K. Freightways
(Dec. 21, 2000), 10th Dist. No. 00AP-350, 2000 Ohio App. LEXIS 6021, *7;Liberty Savings Bank, F.S.B. v. Lawyers Title Ins. Corp. (Dec. 31, 1990), 12th Dist. No. CA89-12-174, 1990 Ohio App. LEXIS 5845, at *7-8. In such cases where prejudice is presumed, the burden then shifts to the insured to rebut the presumption of prejudice. McCann, supra at 8, citingZurich Ins. Co. v. Valley Steel Erectors, Inc. (1968), 13 Ohio App.2d 41,44. The record reveals that the trial court relied on the test expressed in Ormet in reaching its conclusion.
 {¶ 58} The policy at issue in Ormet was not an "automobile liability or motor vehicle liability policy" of insurance. Rather, theOrmet court dealt with a notice provision contained in a business insurance policy held by an aluminum manufacturing facility. In concluding that the aluminum manufacturing facility had breached the notice provision contained in its insurance policy, the court held that a notice provision that requires either "prompt" notice or "immediate" notice or notice "as soon as practicable" requires notice within a reasonable time in light of the surrounding facts and circumstances.Ormet, 88 Ohio St.3d at 303.
 {¶ 59} If the notice is deemed unreasonable, the Ormet court indicated that the next step was to determine whether the insurer suffered prejudice as a result of the unreasonable delay. Id. The Ormet
court also indicated that unreasonable delay created a rebuttable presumption of prejudice. Id. However, the court found it unnecessary to determine whether the insured presented proof to rebut the presumption of prejudice because reasonable minds could only conclude that the insurer "suffered actual prejudice from the delay." Id.
 {¶ 60} As the tests announced in Ormet and Ferrando are substantially the same, it is irrelevant which prompt-notice test was applied in the instant matter. We find that if either test is applied, the same result would follow: 1) Robert and Betty unreasonably delayed giving notice to Liberty of their claims; and 2) Liberty was prejudiced as a result of the delayed notice.
 {¶ 61} It is undisputed that Robert and Betty notified Liberty of the accident approximately eight years after the accident occurred and approximately six years after Robert and Betty settled with the tortfeasor's insurance company. Robert and Betty asserted in their response to Liberty's motion for summary judgment that the reason they delayed in submitting the claim was because:
 "[Liberty] would have denied [Robert and Betty's] UM/UIM claims even if [they] had provided notice and requested [Liberty's] consent to settle with the tortfeasor. Prior to Scott-Pontzer, [Ezawa v. Yasuda Fire Marine Ins. Co. of Am. (1999), 86 Ohio St.3d 557], and Selander, [Liberty] had no reason to believe that [Robert and Betty] could present a UM/UIM claim. Thus, [Robert and Betty's] provision of notice and request for consent would be a vain and futile act leading to the ultimate result — a denial of [Robert and Betty's] UM/UIM claim."
 {¶ 62} We find Robert and Betty's reason for delay is deficient in light of our holding in Gidley v. Cincinnati Ins. Co. (Apr. 17, 2002), 9th Dist. No. 20813. In Gidley, which involved the breach of a subrogation-related provision, this Court had to determine whether or not an insured's four-year delay in notifying the insurer of a settlement with the tortfeasor was unreasonable under the circumstances. Like Robert and Betty, the insured in Gidley contended that the reason for the delay was that she could not have filed a claim with the insurer until after the Ohio Supreme Court decided Scott-Pontzer. We rejected the insured's reason for delay, holding "that the notice given by [the insured] was unreasonably delayed, since awaiting a favorable supreme court decision is not a reasonable excuse for a four-year delay in filing a claim." Id.
at 9.
 {¶ 63} In accordance with our holding in Gidley, we conclude that Robert and Betty's reason for the eight year delay is insufficient, and therefore such a delay was unreasonable. We further find that Liberty has demonstrated that it suffered actual prejudice as a result of Robert and Betty's breach of the prompt-notice provision. In an affidavit attached to Liberty's reply to Robert and Betty's memorandum in opposition to Liberty's motion for summary judgment, Liberty's attorney John H. Reagan averred:
 "3. A reconstruction of this accident was performed by David L. Uhrich, Ph.D., in 1994. Dr. Uhrich has advised he no longer maintains file materials relative to his reconstruction of this accident.
 "4. The reconstruction of this accident was videotaped by Multi-Video Service in Akron, Ohio. Multi-video is searching its archives for a copy of a videotape but, to date, it has not been obtained by defense counsel.
 "5. The Summit County Clerk of Courts no longer maintains copies of the deposition transcripts which were filed in the underlying matter of Robert D. Smith v. Laura Watkins, et al., Summit County Case No. CV93103312. Counsel has attempted to obtain copies of the deposition transcripts from the court reporting agencies.
 "6. Counsel for Defendants have attempted to personally locate [the tortfeasor], who was involved in this accident with [Robert]. To date, counsel have not been successful in contacting [the tortfeasor]."
 {¶ 64} Robert and Betty failed to offer any evidence that Liberty was not prejudiced by the unreasonable delay. In their response to Liberty's motion for summary judgment, they simply argued:
 "[Liberty] had the same ability to investigate [Robert and Betty's] claim upon receipt of notice. The trial of information necessary to investigate the claim was still available. Further, the tortfeasor's insurance carrier and [Robert and Betty's] own UM/UIM carrier conducted a full investigation of the case. Based on the information gathered by these insurers, both carriers agreed to pay policy limits to [Robert and Betty]."
 {¶ 65} Despite Robert and Betty's evidentiary argument, they have failed to attach evidence which indicated that "[t]he trail of information necessary to investigate the claim was still available." For that reason, we find that there was no genuine issue of material fact as to whether Liberty was prejudiced as a result of Robert and Betty's unreasonable delay in providing notice.
 {¶ 66} Because Robert and Betty breached the prompt-notice provision, which resulted in actual prejudice to Liberty, we conclude that they are not entitled to UM/UIM coverage under the BAP. See Ferrando,2002-Ohio-7217, at ¶ 90; Gidley, supra, at 9.
 Liberty's CGL Policy {¶ 67} Robert and Betty have contended that the CGL policy is an automobile policy, subject to the requirements of R.C. 3937.18. Liberty, however, has argued that the CGL is not an automobile liability policy, and assuming that it is such a policy, Robert and Betty are not "insureds," and thus are not entitled to UM/UIM coverage.
 {¶ 68} The initial issue that this Court must resolve is whether the CGL policy is, in fact, an "automobile liability or motor vehicle liability policy." The CGL policy provides coverage for, among other things, bodily injury and property damage. The general coverage clause provides, in pertinent part: "We will pay those sums that the insured becomes legally obligated to pay as damages because of `bodily injury' or `property damage' to which this insurance applies." The policy does, however, contain various exclusions from general liability coverage. An exclusionary provision contained in the CGL Coverage Form states:
"2. Exclusions:
"This insurance does not apply to:
"***
 "g. `Bodily injury' or `property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, `auto'[4]
or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and `loading or unloading.'" (Footnote added.)
 {¶ 69} This exclusion contains several exceptions; specifically, the exclusion does not apply to "`Bodily injury' or `property damage' arising out of the operation of any of the equipment listed in paragraph f. (2) or f. (3) of the definition of `mobile equipment.'"[5] "Mobile equipment" is defined as:
 "[A]ny of the following types of land vehicles, including any attached machinery or equipment:
"***
 "f. Vehicles *** maintained primarily for purposes other than the transportation of persons or cargo.
 "However, self-propelled vehicles with the following types of permanently attached equipment are not `mobile equipment' but will be considered `autos:'
"***
 "(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and
 "(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment."
 {¶ 70} According to the policy's terms, the CGL policy provides liability coverage for the operation of certain mobile equipment, including cherry pickers or similar devices mounted on an automobile or truck chassis. Robert and Betty have argued that such an exception transforms the CGL policy into an "automobile liability or motor vehicle liability policy." We disagree.
 {¶ 71} The Fifth District Court of Appeals in Heidt v. Fed. Ins.Co., 5th Dist. No. 2002CA00314, 2003-Ohio-1785, addressed an issue similar to that presented in the instant case: whether coverage for cherry pickers and similar devices transformed a general liability policy into an "automobile liability or motor vehicle liability policy."[6]
Relying on Hillyer, supra, the Heidt court answered the question in the negative, holding:
 As in Hillyer, the fact that an automobile or truck may be involved because a cherry picker is mounted to it is incidental to coverage. An insured is entitled to recover, not because an automobile or truck is involved, but because of the type of equipment attached to the automobile or truck. Further, the other `mobile equipment' defined in the policy clearly refers to a limited class of equipment not primarily designed to transport people on public roads.
 Finally, the policy clearly provides, in Section F of the definition of `mobile equipment,' that the equipment referred to in paragraphs F.2. and F.3. are not `mobile equipment' but are to be considered `autos.' `Autos' are specifically excluded from coverage according to the bodily injury/property damage exclusions contained in the policy. Therefore, the `mobile equipment' provision does not convert the CGL policy into a motor vehicle liability policy requiring UM/UIM coverage to be offered. This policy was not intended to satisfy the statutory requirement of financial responsibility against liability arising from the ownership or operation of vehicles used for transportation on the highway. Therefore, *** CGL policy is not a motor vehicle liability policy under which UM/UIM coverage had to be offered and [the insured] cannot avail himself of UM/UIM coverage under said policy." Heidt, 2003-Ohio-1785, at ¶ 34-35.
 {¶ 72} The cherry picker exception in Heidt contains substantially the same language as the cherry picker exception in the instant case. Here, the CGL policy provided limited coverage for cherry pickers and similar devices. However, pursuant to the definition of "mobile equipment," such devices were considered "autos," and not "mobile equipment." The policy specifically excludes coverage to bodily injury or property damage caused by "autos." Because a cherry picker and similar devices are considered "autos," and the policy provides that any damage arising out of the ownership, maintenance, and entrustment of an "auto" is excluded from coverage, bodily injury and property damage arising out of the use of cherry pickers and similar devices is actually excluded from coverage.
 {¶ 73} It is obvious from the terms of the contract that the mobile equipment exception is, in fact, not an exception at all. The policy states that bodily injury or property damage arising out of the use of certain mobile equipment is exempt from the general exclusion of automobile liability coverage. Based upon the exception, it would appear that the CGL policy provides coverage for injuries caused as a result of certain mobile equipment (i.e., cherry pickers and similar devices). This exception provides illusory coverage, however. The only "mobile equipment" that the exception applies to are cherry pickers and similar devices. Yet, pursuant to the definition of "mobile equipment," these devices are considered "autos," which are excluded from coverage. The policy basically provides an exception to an exception, and it is apparent that the mobile equipment exception does not provide coverage for cherry pickers and similar devices.
 {¶ 74} Because the cherry picker exception does not, in fact, provide coverage for bodily injury or property damage arising out of the use of cherry pickers and similar devices, such an exception cannot transform the CGL policy into an "automobile liability or motor vehicle liability" policy. Heidt, 2003-Ohio-1785, at ¶ 35; see, also, Smithv. Air-Ride, Inc., 10th Dist. No. 02AP-719, 2003-Ohio-1519, at ¶ 110. Furthermore, even if we assume that the cherry picker exception does provide a limited form of liability coverage, our decision would not change. See Heidt, 2003-Ohio-1785, at ¶ 34. As previously discussed in Hillyer, this Court must look at the primary purpose of the insurance policy. Here, we find that the primary purpose of the CGL policy is not to provide automobile liability coverage. Therefore, the cherry picker exception is incidental to coverage because it is "remote from and insignificant to the type of overall coverage the policy provided[.]"Hillyer, 2002-Ohio-6662, at ¶ 22. Pursuant to Hillyer, such an exception cannot transform an insurance policy into an "automobile liability or motor vehicle liability" policy of insurance. See Heidt,2003-Ohio-1785, at ¶ 34. As such, R.C. 3937.18 does not apply, and UM/UIM coverage does not arise by operation of law. Therefore, Robert and Betty are not entitled to UM/UIM coverage under the CGL policy.
 {¶ 75} Accordingly, Robert and Betty's second assignment of error is not well taken.
 Midwestern's Cross-Assignment of Error "[ROBERT AND BETTY] ARE NOT ENTITLED TO UM/UIM BENEFITS UNDER EITHER *** MIDWESTERN[`S] [BOP] OR THE UMBRELLA POLICY BECAUSE [ROBERT AND BETTY] VIOLATED THE GENERAL CONDITIONS OF THE POLICY WITH REGARD TO NOTICE."
 {¶ 76} In Midwestern's cross-assignment of error, it has argued that, assuming the BOP and umbrella policy are automobile liability policies of insurance and Robert is an "insured" under the policies, Robert and Betty are precluded from UM/UIM benefits under Midwestern's policies because they breached the terms and conditions of those policies by failing to give prompt notice of the accident, and subsequently settling with the tortfeasor.
 {¶ 77} In light of our disposition of Robert and Betty's first assignment of error, Midwestern's cross-assignment of error is deemed moot. See App.R. 12(A)(1)(c).
 III. {¶ 78} Robert and Betty's assignments of error are overruled; Midwestern's cross-assignment of error is moot. The judgment of the trial court is affirmed.
BATCHELDER, J. CONCURS.
CARR, P.J. CONCURS IN JUDGMENT ONLY
[1] If a document does not fall within one of the categories listed in Civ.R. 56(C), it can only be introduced as evidentiary material through incorporation by reference in an affidavit. Martin v. Central OhioTransit Auth. (1990), 70 Ohio App.3d 83, 89. Furthermore, "[d]ocuments which are not sworn, certified, or authenticated by way of affidavit have no evidentiary value and shall not be considered by the trial court."Mitchell v. Ross (1984), 14 Ohio App.3d at 75. The record reveals that none of the policies (i.e., Midwestern's BOP and umbrella policy, and Liberty's BAP and CGL policy) were incorporated through the use of an affidavit, and are therefore not proper Civ.R. 56(C) evidence. "However, if the opposing party fails to object to improperly introduced evidentiary materials, the trial court may, in its sound discretion, consider those materials in ruling on the summary judgment motion."Christe v. GMS Mgt. Co. (1997), 124 Ohio App.3d 84, 90, reversed on other grounds (2000), 88 Ohio St.3d 376. We find that neither party objected to the policies as being improper Civ.R. 56(C) evidence, and therefore this Court can consider the policies.
[2] H.B. 261, which became effective September 3, 1997, amended R.C.3937.18 to include a definition of an "automobile liability or motor vehicle liability policy" of insurance; R.C. 3937.18 was subsequently amended by S.B. 57, S.B. 267 and S.B. 67, which further narrowed the applicability of R.C. 3937.18 to policies of insurance. As a result of H.B. 261, R.C. 3937.18 only applied to umbrella policies or policies that served as proof of financial responsibility. See Hillyer v. State FarmFire Cas. Co., 97 Ohio St.3d 411, 2002-Ohio-6662, at ¶ 14, fn. 2.
[3] Liberty has failed to argue that Robert and Betty are not insureds. Thus, we assume that Robert and Betty are "insureds" for purposes of coverage under Liberty's BAP.
[4] "Auto" includes "a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But `auto' does not include `mobile equipment.'"
[5] Prior to an amendment, the general auto exclusion had a "parking" exception, which provided that the exclusion did not apply to: "Parking an `auto' on, or on the ways next to, premises you own or rent, provided the `auto' is not owned by or rented or loaned to you or the insured[.]" By amendment, the "parking" exception was deleted from the policy.
[6] In Watkins v. Transcontiental Ins. Co. (2001), 94 Ohio St.3d 1406, the Ohio Supreme Court declined to answer the following certified question in regard to a commercial general liability policy:
 "1. Does language in the policy that provides limited liability coverage for parking an auto on, or on the ways next to premises the insured owns or rents, and for the operation of mobile equipment including cherry pickers or similar devices mounted on automobile or truck chassis transform the policy into a `motor vehicle liability policy' for which an offer of UM/UIM coverage was mandated by the version of R.C. 3937.18 in effect at the time the policy was issued?"